(33 Misc. Rep. 271.)

In re SEYMOUR'S ESTATE.

(Surrogate's Court, Westchester County. December, 1900.)

ADMINISTRATION—DECEASED SON.

Where a son died intestate, leaving a widow and infant child, his only heirs at law and next of kin, both of whom subsequently died, the child dying first, the father of the intestate is not entitled to administration on the estate under Code Civ. Proc. § 2660, providing that administration in case of intestacy must be granted to relatives of deceased entitled to succeed to his personal property, since he is not entitled to a distributive share of his son's estate, as the personalty will pass directly to the representatives of the widow.

Application by Henry B. Seymour for letters of administration of the goods, chattels, and credits of George Seymour, deceased. Denied.

Lewis C. Platt, for petitioner.

SILKMAN, S. This is an application on the part of Henry B. Seymour, father of decedent, for the issuance of letters of administration to him. The decedent died February 6, 1890, intestate, leaving a widow and an infant child, his only heir at law and next of kin. He also left him surviving his father, the petitioner, a mother, and brother and sister. The widow and child died subsequent to decedent,—the child first; and the personal property here will pass entirely to the legal representatives of the widow. The petitioner, although not entitled to a distributive share in the estate of decedent, claims the right to administration under the language of section 2660 of the Code of Civil Procedure, and under the authority of the cases of Lathrop v. Smith, 24 N. Y. 417, In re Wilson, 92 Hun, 318, 36 N. Y. Supp. 882. The language of section 2660 would seem to show a clear legislative intention to restrict the granting of administration to relatives who had an interest in the distribution of the intestate's estate. This appears in the first sentence: "Administration in case of intestacy must be granted to the relatives of the deceased entitled

to succeed to his personal property, who will accept the same in the following order." And also in subdivision 8, "To any other next of kin entitled to share in the distribution of the estate." The Lathrop Case was decided under the provisions of the Revised Statutes, wherein the language was somewhat different, in that the words "would be" precede the words "entitled to share." The change in the language justifies an entirely different construction of the statute. The words "entitled to share" can have but one meaning, and that is, a reference to the persons presently interested, and not those who might be or would be upon the happening of events. In the Lathrop Case, the father renounced, and letters were issued to a creditor. Upon the application a brother of the decedent was not cited, and the surrogate's action was reversed, for the reason that the brother was, upon the renunciation of the father, next entitled to letters, under the statute as it then stood. The brother would have been entitled to share in the estate upon the death of the father, and in the prevailing opinion in that case Judge Davies says:

"The true construction of the statute would therefore seem to be that all persons who might be entitled to participate in the distribution of the estate, being the widow, relatives, or those representing relatives of the deceased, have the first right to the administration in the order named in the statute."

Under the present language such a construction would be impossible. The words do not contemplate futurity; they contemplate present interest. That it is the policy of the law to grant administration to the persons most interested seems to be settled. Cottle v. Vanderheyden (court of appeals, 1870) 11 Abb. Prac. (N. S.) 17. In that case Chief Judge Church says:

"The obvious policy of the statute is to grant administration directly to those most interested in the estate, and the appointment of representatives of persons entitled is purposely preferred only to strangers."

It is those who have a property interest, and not those interested from sentiment and blood relationship, that are referred to by the learned chief judge. The change in language of the statute was not due to codification or revision, but was an independent act of the legislature. It may be well for a moment to look at the history of the statute. After the decision in the Lathrop Case, the legislature, in an act generally amending the law in reference to the proceedings in surrogates' courts (Laws 1863, c. 362), amended section 27, tit. 2, c. 6, pt. 2, of the Revised Statutes, which related to the granting of letters of administration, by adding thereto the following words:

"This section shall not be construed to authorize the granting of letters to any relative not entitled to succeed to the personal estate of the deceased as his next of kin at the time of his decease."

In 1867 the law in relation to the powers and jurisdiction of surrogates' courts was generally amended again, and section 27, relating to the issuance of letters of administration, was altered by providing for the issuance of letters of administration to the mother, after the father and before the brothers, which right was not given in the original statute, and the previous amendment of 1863, either by design or oversight, was omitted. The statute remained in this condi-

tion until after the law relating to surrogates' courts was codified and made part of the Code of Civil Procedure. Section 2660, as it came from the codifiers, and as originally enacted, made no reference to the order in which administration should be granted, and the repealing act did not repeal the provisions of the Revised Statutes in that regard. The law thus remained until 1893, when, by chapter 686, section 2660 was given substantially its present form, and we find the language "would be entitled to succeed to his personal property" changed to the words "entitled to succeed to his personal property." In view of the policy of the law as laid down in the Cottle Case, I think the action of the legislature sufficiently indicative of an intention to change the rule adopted in the Lathrop Case. I am not unaware that this conclusion is directly in conflict with the remarks of the court in Re Wilson, above cited. An examination of that case, however, shows clearly that what was said by the court upon the construction to be given to section 2660 of the Code was obiter. That was a case where the widow of the intestate had entered into a separation agreement, whereby she released her right of dower and all interest in the real and personal property of the intestate, and the point was made that under the agreement she had waived her right to administer. At the very outset Justice Merwin says, in his opinion:

"It is practically conceded that she is entitled, unless she is disqualified by reason of the effect to be given to the provisions of an agreement of separation made between the respondent and her husband and a trustee on the 14th of September, 1894."

There was, therefore, nothing for the court to have done in that case but to determine that the surrogate's court had no authority to construe an agreement of separation, and no right to deny to the widow her statutory right to letters of administration without an express renunciation. She was entitled to a distributive share under the statute, and that is the condition which the legislature had in mind. It never intended to provide for cases of private agreement. She was entitled to succeed at law to a part of her husband's estate, and was, therefore, entitled to administer. The discussion by the court of the effect of section 2660 was not called for, and the question could not have been properly presented by reason of the concession which counsel made at the outset. I think I am justified in the view that the Wilson Case should not be allowed to control. The application for letters of administration must be denied.

Application denied.